# CT Corporation

**Service of Process Transmittal**
02/27/2018
CT Log Number 532869385

**TO:** Tracey Gilliam, Chief Counsel of Litigation
Metropolitan Life Insurance Company
200 Park Avenue
New York, NY 10166

**RE:** **Process Served in Louisiana**

**FOR:** Metropolitan Life Insurance Company (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CLYDE GUILLORY, Pltf. vs. Metropolitan Life Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Citation, Petition |
| **COURT/AGENCY:** | ST. LANDRY; 27TH JUDICIAL DISTRICT COURT, LA<br>Case # C180033C |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/27/2018 postmarked on 02/26/2018 |
| **JURISDICTION SERVED:** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | Within 15 days after service |
| **ATTORNEY(S) / SENDER(S):** | James T. Guglielmo<br>Guglielmo, Lopez, Tuttle, Hunter & Jarrell<br>Post Office Drawer 1329<br>306 E. North Street<br>Opelousas, LA 70571-1329<br>337-948-8201 |
| **REMARKS:** | Documents were served upon the Louisiana Secretary of State on 02/26/2018 and forwarded to CT Corporation. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/28/2018, Expected Purge Date: 03/05/2018<br><br>Image SOP<br><br>Email Notification, MetLife Litigation Intake litigationintake@metlife.com |
| **SIGNED:** | |
| **ADDRESS:** | C T Corporation System<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816-4378 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of 1 / MC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



EXHIBIT A

**TOM SCHEDLER
SECRETARY OF STATE
P.O. BOX 94125
BATON ROUGE, LA 70804-9125**



FIRST CLASS



U.S. POSTAGE ≫ PITNEY BOWES

ZIP 70802 $ 005.50⁰
02 4W
0000352947 FEB 26 2018

METROPOLITAN LIFE INSURANCE COMPANY
C/O CT CORPORATION SYSTEM
3867 PLAZA TOWER DR
BATON ROUGE, LA 70816

Suit No.: 180033
27TH JUDICIAL DISTRICT COURT

7017 3040 0000 2519 5872

## State of Louisiana
## Secretary of State

02/26/2018

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

METROPOLITAN LIFE INSURANCE COMPANY
C/O CT CORPORATION SYSTEM
3867 PLAZA TOWER DR
BATON ROUGE, LA 70816

Suit No.: 180033
27TH JUDICIAL DISTRICT COURT
SAINT LANDRY PARISH

CLYDE GUILLORY
vs
METROPOLITAN LIFE INSURANCE COMPANY

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

TOM SCHEDLER
Secretary of State

Served on: TOM SCHEDLER
Mailed by: JAMES T GUGLIELMO

Date: 02/23/2018
Title: ATTORNEY

No: 1068606

KC

## CITATION
## STATE OF LOUISIANA

| | |
|---|---|
| CLYDE GUILLORY | 27th JUDICIAL DISTRICT COURT |
| VS | PARISH OF ST. LANDRY |
| METROPOLITAN LIFE INSURANCE COMPANY | CIVIL NO. C-180033C |

TO THE DEFENDANT  METROPOLITAN LIFE INSURANCE COMPANY, THROUGH ITS AGENT FOR SERVICE OF PROCESS: LOUISIANA SECRETARY OF STATE, 8585 ARCHIVES AVENUE, BATON ROUGE, LA. 70809

You are hereby summoned to comply with the demand contained in the petition/of which a true and correct copy (exclusive of exhibits) accompanies this citation, or make an appearance, either by filing a pleading or otherwise, in the 27th Judicial District Court in and for the Parish of St. Landry, State of Louisiana, within fifteen (15) days after the service hereof, under penalty of default.

SERVED ON
TOM SCHEDLER
FEB 23 2018
SECRETARY OF STATE
COMMERCIAL DIVISION

Witness the Honorable the Judges of said Court, this __3RD__ day of __JANUARY__, A. D. 2018.

Issued and delivered __JANUARY 9, 2018__

*Cassie Miller*

Deputy Clerk of Court


REQUESTED BY: JAMES T. GUGLIELMO

| | | |
|---|---|---|
| CLYDE GUILLORY | * | CIVIL DOCKET NO. 18C0033C |
| VERSUS | * | 27TH JUDICIAL DISTRICT COURT<br>STATE OF LOUISIANA |
| METROPOLITAN LIFE INSURANCE<br>COMPANY (Metlife) | * <br> * | IN AND FOR THE PARISH<br>OF ST. LANDRY |

**PETITION FOR DAMAGES**
**TRIAL BY JURY**

The petition of CLYDE GUILLORY, a resident of Opelousas, St. Landry Parish, with respect represents:

1.

Petitioner is a citizen of the State of Louisiana and defendant is a foreign insurance company authorized to do and doing business in the State of Louisiana and has appointed the Secretary of State as its agent for service of process.

2.

Under Article 76 of the Louisiana Code of Civil Procedure, venue is proper since the insured is domiciled in the Parish of St. Landry as well as where the accident and illness occurred.

3.

That Metlife issued a policy KM05919777-G being a short term disability income policy in favor of Clyde Guillory with commencement of disability date of September 21, 2015. The policy was in full force and effect when Clyde Guillory sustained an incident which resulted in an MRI and subsequent surgery to his low back. Under the short term disability policy, Petitioner was to receive sixty (60%) percent of the first $2500 of the predisability earnings subject to a maximum of $1500 weekly with a maximum benefit period of twenty-four (24) weeks. Disabled or disability was defined under the policy that which was "due to sickness or as a direct result of accidental injury";

> "You are receiving appropriate care and treatment and complying with the requirements of such treatment; and
> You are unable to earn more than eighty (80%) percent of your pre-disability earnings at your own occupation for any employer."

There was a fourteen (14) day elimination period.

4.

Adequate proof of loss was submitted to Metlife listing plaintiff's doctors as Dr. Kirk E. Elliott and Dr. George Raymond Williams.

5.

Petitioner was a long time employee of Progressive Tractor at different locations in Louisiana, but including those in Opelousas, Louisiana (St. Landry Parish) and Cecelia, Louisiana

St. Landry Parish Clerk of Court
01/03/18 11:16:23
St. Landry Parish Clerk of Court

OPELOUSAS, LOUISIANA 1-4, 2018
This is to certify that the above is a true and correct copy of the original on file in the office of the Clerk of Court of St. Landry Parish.
Cassie Miller
Deputy Clerk of Court

St. Landry Parish Clerk of Court
Filed Jan. 03, 18
Cassie Miller

(St. Martin Parish).

6.

Petitioner's disability commenced on September 21, 2015. An MRI revealed a large disc herniation at L5/S1 shortly thereafter.

7.

On October 7, 2015, Dr. George Williams filled out a form advising plaintiff was not able to work at this time pending surgery outcome and the disability claim eventually recognized by Metlife. Surgery followed shortly thereafter for the ruptured disc in the low back.

8.

Basic earnings of the plaintiff was listed at $62,400.

9.

Disability benefits commenced on September 29, 2015 because there was a fourteen (14) day waiting period with a date of disability being September 15, 2015.

10.

On October 8, 2015, Metlife had reviewed the initial claim and approved the claim only from September 21, 2015 through November 15, 2015, however despite undergoing disc surgery.

11.

On November 10th, benefits were extended through December 8, 2015. On December 8th, benefits were extended through January 14, 2016.

12.

Certain benefits were paid by Metlife. However, the weekly benefit amount varied. For example, what appears to be a check was for only four (4) days of benefits from January 11, 2016 to January 14, 2016, with the gross payment of $411.43 and a net payment of $379.95. There were deductions for FICA and Medicare. Benefits were stopped and later resumed for the period of January 15, 2016 to February 7, 2016. Three (3) weeks were paid in the weekly amount of $720 for a gross payment of $2268.57, but with deduction for old age of $153.05 and Medicare in the amount of $35.79 resulting in a net payment of $2279.73. The next benefit was paid February 8, 2016 in the amount of $720 for one (1) week and with offsets for Medicare deductions with a net payment of $664.92. There was another payment of March 7th through March 14, 2016. The weekly amount paid was $720 with a gross payment of $822.86 for a net payment of $759.91.

13.

Accordingly, we do not have copies of the other checks, but the amounts were varying and the payments were inconsistent as well as untimely. For example on January 22, 1016 a letter

was sent to plaintiff by Metlife advising his short term disability benefits would terminate as of January 14, 2016 because he no longer satisfied the definition of 'disability' in the plan. Plaintiff was a service mechanic which required he perform heavy type duties.

14.

The January 22, 2016 letter further indicated he had been out of work since September 15, 2015 due to radiculopathy of the lumbar region and had been treated by Dr. George Williams. According to Metlife, it had received medical records from Dr. Williams to evaluate his ongoing disability beyond January 14, 2016. The office notes indicates there were normal testing results and normal sensation testing found therefore, due to lack of medical information to support plaintiff's claim he was disabled from performing the functions of a service mechanic, his case was being closed and no further benefits would be payable. It was then indicated an appeal could be taken.

15.

The actions were an arbitrary and with unjustified and unreasonable determinations. There is some question as to what occurred later, but it appears certain benefits may have been paid sporadically up through March 14, 2016.

16.

According to Metlife, benefits were to commence on September 29th. It apparently did not fulfil the policy request of paying him the short term disability for the amounts specified in the policy and for the length of his disability in a timely manner.

17.

Under the short term disability policy, Metlife made arbitrary and capricious decisions to terminate or halt benefits without undertaking an adequate check into exactly what this man's duties were and to find out what his exact limitations, were, what his earnings could have been, etc. although the attending physician, Dr. George Williams had indicated he was disabled from his regular work. The entire term of short term disability was spent by Metlife seeking to stop benefits repeatedly and then reversing then stopping.

18.

Metlife also issued an additional policy under Group Policy Number KMO5919777-G which is a disability income insurance for long term benefits. Under that policy the employer listed was Progressive Tractor. It was indicated this was a group policy being a contract between Metlife and the employer, Progressive Tractor. Under this policy, it was issued to all active full time employees with ten (10) or more years of service. At the time of the issuance, petitioner had

already been employed by Progressive in excess of that period. The monthly benefits would have been sixty (60%) percent of the first $10,000 of plaintiff's pre-disability earnings subject to the income which would reduce his disability benefits with a maximum monthly benefit of $6000 and an elimination period of one hundred eighty (180) days. The benefit period was to be paid to age 65.

19.

Petitioner was born on April 21, 1961.

20.

Disability under the long term disability policy of Metlife is defined as "due to sickness or as a direct result of an accidental injury":

1) You are receiving appropriate care and treatment and complying with the requirements of such treatment; and
2a) You are unable to earn during the first twenty-four (24) months of sickness or accidental injury, more than eighty (80%) percent of your pre-disability earnings at your own occupation for any employer in your local economy; and
3) After such period more than eighty (80%) percent of your pre-disability earnings from any employer in your local economy at any gainful employment.

21.

This definition is contrary to the insurance regulations under LA. R.S. 22:990, which provides that total disability may be defined in relation to the inability of the person to perform duties, but shall <u>not</u> be based solely upon an individual's inability to:

1) Perform "any occupation whatsoever", "any occupational duty", or "any and every duty of its occupation"; or

2) Engage in any training or rehabilitation program.

C) A general definition of total disability in such a policy should not be more restrictive than the one requiring an individual to be totally disabled from engaging in any employment or occupation for which he is, or becomes, qualified by reason of education, training or experience providing him with substantial same earning capacity as his former earning capacity prior to the start of the disability.

22.

Accordingly, the policy of disability of Metlife is contrary to the restrictions under Section 990 of the Louisiana Insurance Code.

23.

Further to the extent that the insurer contends that ERISA is applicable, ERISA has been interpreted by the Courts that any ambiguity must be construed against the insurer. ERISA does preserve and has concurrent jurisdiction in Federal and State Courts. An exception to ERISA is a savings clause. Violation of the disability interpretation by Metlife falls within the savings clause as that interpretation would impact the laws on the insurance industry in the State of Louisiana and which statute specifically addresses the term 'disability'. Thus, the conflict of the policy with the

statute above disallows preemption by ERISA, and permits this case to remain in the Louisiana State Courts. Furthermore, R.S. 22:657 requires all payments to be made within 30 days of the law and that was not followed by Metlife.

24.

Plaintiff is entitled to penalties and attorney fees as provided under Louisiana Revised Statute 22:657 as to an arbitrary denial of benefits. Louisiana RS. 22:657 is now replaced by R.S. 22:1821 which governs the payment of claims held in accident and/or disability policies and for penalties and attorney fees, all of which involve the rights of the State of Louisiana that saves the application of any state law inasmuch as that provision also regulates insurance; that the statute also allows for payment of interest at the rate set forth under the statute from date of receipt of the date of proof until paid. In this instance, insurer paid long term disability benefits for a limited period of time and therefore arbitrarily capriciously without cause ceased making the benefit payments under the policy and/or provisions under the Louisiana Insurance Code. Failure to make payment every thirty (30) days results in a penalty to the insured of double the amount of the benefits due under the terms of the policy together with attorney fees to be determined by the Court.

25.

The policy does provide that the policy is issued for delivery in and governed by the laws of the State of Louisiana.

26.

Plaintiff has not returned to his usual and normal occupation as he continues to be disabled under the policy and is required to do heavy lifting among other tasks.

27.

Petitioner also had a lot of inner personal relationships to do his job properly. He had many stressful situations necessary to perform this job. He further had to drive cars, trucks, forklifts or other equipment. He had to be moving around machinery and/or equipment. He had to walk on uneven ground. He was exposed to dust, gas fumes. There was exposure to changes of temperature and/or humidity. He had to work overtime on a required basis. He had to do climbing at times as some of the equipment such as Harvesters and cane cutting machinery were extremely high off the ground and required him to climb to perform his duties. Sometimes he had to get on top of the pieces of equipment to perform some of the work. To do his work, he had to stand for at least 7 or 8 hours a day. To grasp, he had to use both hands.

28.

In reviewing the policy and a letter of March 1, 2016, Metlife wrote to Mr. Guillory advising him in order to receive long term disability benefits, the plan states:

"Disabled or disability means that, due to sickness or as a direct result of actual injury:

You are receiving appropriate care and treatment and complying with the requirements of such treatment; and you are unable to earn;

During the first twenty-four (24) months of sickness or accidental injury, more than eighty (80%) percent of your pre-disability earnings at your own occupation for any employer in your local economy.

After such period, more than eighty (80%) percent of your disability earnings from any employer in your local economy at any gainful occupation.

For which you are reasonably qualified, taking into account your training, education and experience; and

Which provided you with substantially the same earning capacity as your former earning capacity prior to the start of your disability.

It later indicated he would receive only twenty-four (24) months of long term disability benefits.

29.

By letter of March 1, 2016, his employer was advised plaintiff was approved for long term disability.

30.

The letter to plaintiff of March 1, 2016 described disability as due to neuromuscular, muscular or tissue disorder. If you are disabled due to radiculopathies, myelopathies, etc. Metlife took the position one could be disabled only if you have objective evidence of that, but regardless it would only pay twenty-four (24) months of disability including the elimination period. It therefore indicated his disability seemed to be due to a back disorder which is limited as described above and therefore, the maximum benefit period during the limited condition would be reached on September 14, 2017. It then indicated if further benefits went beyond September 14, 2017 only if he continued to satisfy the definition of disability solely due to other non-limited medical conditions and/or plan requirements. Total disability beyond the 24 months was defined as being 80% of your pre-disability earnings for any employer in his local economy at any gainful employment.

31.

He was then told his first check would be issued, however, petitioner does not have a copy of the check.

32.

On March 2, 2016 being the next day and certainly in an effort to reduce their exposure, Metlife wrote a letter to plaintiff advising it could get someone with the Advocator Group in

Massachusetts to handle a social security claim for him. It also sent him a form for authorization to refer plaintiff to a social security representative for assistance to pursue social security insurance benefits. In response to the inquiry from Metlife, forms were submitted to have Metlife select an attorney to represent the plaintiff in a social security claim as Mr. Guillory did not have an attorney at the time.

33.

Because his earnings were $5200, sixty (60%) percent of that equaled $3120 and therefore, Metlife would issue the first check on April 7, 2016 to cover benefits from March 15, 2016 through April 15, 2016 in the gross amount of $3120.

34.

In a letter of September 19, 2016, the amounts of payments were reduced by Metlife because of the receipt of social security benefits. At that point from March 15, 2016 through April 29, 2028 he was to receive a monthly income of $1810. Because he had received Social Security benefits from March 15, 2016 through September 15, 2016, there was an overpayment, and he would have to refund the amount of $8,145. He did receive a credit because the attorney selected by Metlife had approved a fee between him and the attorney selected by Metlife of $1,310 and a credit would be given to him for that reimbursement.

35.

By letter of October 20, 2016. Metlife acknowledged reimbursement benefits of $8145 from Mr. Guillory.

36.

Metlife retained an independent physician consultant and indicated that the restrictions and limitations did not preclude this man from returning to work currently and ongoing. This was by letter as early as November 29, 2016.

37.

Metlife has not applied the definition of what is total disability in the State of Louisiana much less under the policy. This consultant was believed to be a nonresident of the State of Louisiana and had no idea what the wages were in the State of Louisiana. In the conclusion, Metlife complained there was no restriction or limitations precluding this man from returning to his job which we find contrary to what Dr. Williams will opine. Dr. Elliott will probably concur. As early as 2016, Metlife was again already trying to deny this man disability benefits. On November 29, 2016, it determined that his benefits would be paid through November 29th but would terminate November 30, 2016.

38.

It did admit in its letter of the fall of 2016 that his occupation was considered medium demand because he had to lift 50 - 100 pounds of force occasionally and 25 – 50 pounds frequently. The medical information indicated he was not precluded from returning to his job.

39.

Prior to the determination, there was another letter previously issued on September 23, 2016 and a form filled out indicating plaintiff had a diagnosis of lumbar stenosis and lumbar spondylosis. He could sit, stand and walk for thirty (30) minutes. He could not climb. He could not twist, bend or stoop. He could reach above his shoulder level and operate a motor vehicle. He could occasionally lift 11-20 pounds; never lift 21-50 pounds; never lift 51-100 pounds; never lift over 100 pounds. He could not do any push or pulling. He could not return to his regular job; could not return to light work; and could not return to medium work. The restrictions were permanent. There was notice that due to the heavy nature of his job, he was incapable of returning to work. Apparently, this form was presumed to have been completed by plaintiff.

40.

Later, a letter was written on November 7, 2016 stating if Metlife did not receive anything from Dr. George Williams, it would have a director review his claim and conduct an independent review.

41.

On December 14, 2016, Metlife stated it received an <u>appeal</u> letter and would evaluate the information.

42.

On December 29, 2016, another letter was sent by Metlife stating in connection with his appeal, it would have the file reviewed by an independent physician consultant specializing in orthopedic surgery.

43.

Metlife requested a consult of December 26, 2016, by a physician selected by Metlife being Dr. Richard H. Bolt, board certified orthopedic surgeon.

44.

The report of Dr. Richard H. Bolt who examined the records and issued an opinion of December 26, 2016, (as a consultant to Metlife), indicated this man still had limitations that he could only sit and stand and walk intermittently; having to change his position at least every thirty (30) minutes; that he should limit bending, stooping and climbing to only occasionally; could lift 5-

10 pounds frequently; and 11-20 pounds occasionally, but not lift more than twenty (20) pounds. He should avoid walking on uneven ground and should avoid being around moving machinery, particularly since he was still on narcotic medication.

45.

By note of January 5, 2017, Dr. Williams responded he had reviewed the report of Dr. Bolt and agreed the limitations were reasonable and should be tried to see if the patient could tolerate this.

46.

On January 6, 2017, Metlife reversed its decision and granted the appeal stating it was going to reinstate benefits. In fact on January 10, 2017, it received information and stated in a letter he remained disabled as defined in the policy. Therefore, they reinstated the claim effective November 30, 2016.

47.

In the fall of 2016, Metlife had terminated benefits and the plaintiff took an appeal for the denial of November 29, 2016.

48.

Dr. George Williams then submitted a report of December 8, 2016 and concluded that his duties required heavy to medium work and that he was incapable of doing that.

49.

Finally, a delayed check was issued on January 11, 2017 for benefits from November 30, 2016 through January 14, 2017 with a net amount of $3121 less deduction which resulted in primary benefits of $2715.

50.

Metlife then again terminated his benefits by letter of August 22, 2017 and he would have to seek an appeal.

51.

It admitted receiving an appeal and office notes from Dr. Williams of September 21, 2015 through December 8, 2016. He was advised by Metlife that his medical documentation did not support continued findings of disability. Metlife had the MRI results of September 17, 2015. It admitted he had surgery on October 21, 2015. It further stated he could receive long term disability until his retirement age. It claims it had a consultant review his records. The consultant, Dr. Germaine Rowe never examined plaintiff, but only reviewed office records. He attempted to have a telephone call with Dr. Williams on two (2) dates, but for whatever reason he never spoke

with Dr. Williams. Accordingly, this consultant, without having spoken to Dr. Williams, stated because there was no medical records on file beyond September 14, 2017, apparently there was no reason to consider he was disabled any longer. He did admit Dr. Elliott had indicated plaintiff presented with a complaint of back pain on March 1, 2017. What was referred by Dr. Elliott was what took place in September 2015. Dr. Elliott further indicated from the exam of March 1, 2017 that pain radiated to the left leg and plaintiff's examination revealed tenderness with muscle spasm which is an objective sign and decreased range of motion. The clinical impression was degenerative disc disease and spinal stenosis. Straight leg raising was positive and a narcotic was prescribed, Norco.

52.

This out of state consultant stated that because there was no medical to support functional limitations beyond September 14, 2017. Metlife stated in further efforts to insure documentation, it faxed the consultant's report to Dr. Williams on October 19, 2017 otherwise, Dr. Williams was to provide a report. However, the determination shows that Dr. Williams submitted an office note on October 24, 2017. It was determined that the note was similar to prior office notes. Because he received twenty-four (24) months of benefits for the neuromuscular and soft tissue disorder condition, no further benefits were to be paid.

53.

By letter received dated November 2, 2017, plaintiff was advised his benefits were terminated previously based upon Metlife's conclusion that he did not satisfy the definition of disability. They reviewed the information provided in his request for an appeal along with additional information and stated because he had received twenty-four (24) months of benefits due to a neuromuscular skeletal/ soft tissue disorder, there was a maximum period for these conditions and nothing to support a diagnosis of radiculopathy beyond September 14, 2017.

54.

Metlife completely ignored the fact that this man had a disc removed and was no longer able to perform his regular occupational duties. He certainly was not able to earn eight (80%) percent of his predisposable income from any employer in this local economy at any "gainful employment" (which is contrary to the Louisiana Statutory provision of total disability). However, in this same letter it admits it had had reviewed his medical and that he had ceased working September 11, 2015 due to lumbosacral radiculopathy, lumbar radiculopathy, lumbar back pain, lumbar degenerative disc, lumbar herniated nucleus pulposus, lumbar spondylosis, lumbosacral herniation, lumbago, lumbar disc displacement, low back pain and lumbar stenosis. They

admitted his job required he lift and carry up to twenty (20) pounds frequently. It claimed the medical documentation did not support continued functional restriction and limitation from a nonlimited diagnosis at the diagnosis of exclusion that would prevent him from his ability to perform any occupation beyond September 14, 2017.

55.

Metlife obviously and arbitrarily ignored the fact that plaintiff had some very severe and serious back surgery involving the removal of a disc that on one hand they acknowledged, but on the other hand it wanted to treat it as a neuromuscular and soft tissue disorder and without further disability. Metlife found that plaintiff's lumbar back pain, lumbar degenerative disc, lumbar herniated nucleus pulposus, lumbar spondylosis, lumbosacral herniation, lumbago, lumbar disc displacement, low back pain and lumbar stenosis fell under this provision. Therefore, it denied benefits beyond September 14, 2017.

56.

Metlife then claimed that Metlife staff reviewed the notes of Dr. Williams and Metlife on the appeal for disability beyond September 14, 2017.

57.

The notes consisted of a functional evaluation assessment in July 2016 Dr. Williams reported plaintiff was able to sit for thirty (30) minutes, stand for thirty (30) minutes and walk for thirty (30) minutes at a time. He could only lift 11-20 pounds occasionally. No climbing, twisting, stooping, bending, pushing, pulling.

58.

The actions of Metlife are another indication of the arbitrary and capricious efforts of Metlife to terminate benefits. During this period of time, the plaintiff was not receiving his benefits.

59.

By letter of January 13, 2017, Metlife then wrote a letter stating it would only pay for twenty-four (24) months of disability including the elimination period. It claimed his condition is not totally disabling as defined under the policy, but should be limited to only twenty-four (24) months because he had a radiculopathy. He then explained to continue disability he must satisfy the definition of disability. He would have to show his disability was related to a different type of condition.

60.

There was also a letter of January 24, 2017 from Metlife to plaintiff in which it stated as of January 24, 2017, Metlife determined he is currently disabled under the plan's definition of

disability and in order to receive benefits through September 14, 2017, he must remain disabled from "your own occupation". After September 14, 2017, he would need to determine he was disabled from any employment in his local economy at any gainful employment under the plan's definition of disability. It then advised him since his disability was due to low back, his condition was limited to twenty-four (24) months. Therefore, benefits would cease on September 15, 2017.

61.

It opined one could not be disabled with low back pain longer than twenty-four (24) months.

62.

Metlife issued another letter of October 11, 2017 and Metlife made an assessment. It first stated it had spoken and claimed Dr. Williams had not seen the plaintiff in 2017. However, Metlife ignored a report issued on March 1, 2017 from the St. Francis Medical Center being Dr. Kirk Elliott or his partner who stated that Mr. Guillory was disabled and had muscle spasms and decreased range of motion. The clinical impression was degenerative disc disease and spinal stenosis. Straight leg raising was positive and a narcotic was prescribed.

63.

Metlife noted an appeal form was filed by the plaintiff on November 28, 2017. It did note the findings in that assessment of the St. Francis Medical Center. It did note his job required him to do a lot of walking of 7 – 8 hours; frequent lifting up to 20 pounds with a maximum to 150 pounds. Frequent reaching, bending, twisting, stooping, crouching and kneeling; constant handling and occasional climbing. It also included driving trucks, forklifts and other equipment. Metlife then determined the medical evidence did not support the claimant having objective evidence of any of the following on or around 9/15/17. Included in that list was radiculopathies, musculopathies among other conditions. Further medical information did not support functional imitation related to any of those diagnosis as of 9/15/17. Therefore, it claimed there was no medical basis to support functional limitation. This was based upon an opinion issued by Dr. Germaine N. Rowe, a doctor in physical medicine and rehabilitation in the State of New York. Accordingly, based upon this finding and being a doctor who did not even examine the plaintiff, but only looked at records of the Metlife file determined he was not disabled.

64.

Another appeal had to be taken by the plaintiff. However, Dr. Williams did respond on October 24, 2017 advising the plaintiff had been examined by him on October 24, 2017 with a history of sharp and shooting pain in the lumbar region to symptoms aggravated by bending, daily

activities, sit to stand, sitting and walking. There was a decline in reflexes. The patient's symptoms were relieved by pain medication, pain radiating into left lower leg. Patient unable to walk any distance without having severe pain; a history of prior lumbar decompression on October 25th. The medication was listed, but the straight leg raising apparently resulted in fire pain, examine notes was radiating into the left 4-L5 distribution area. An impression was low back pain, radicular lumbar region, other spondylosis with radiculopathy lumbar region, disc displacement, lumbosacral region; other intervertebral disc displacement in lumbar region.

65.

The medical evidence did support the doctor's impression of radiculopathy and musculopathies. He has this condition and does support functional limitations to the diagnosis since 9/15/17. The other diagnosis he has had since 9/16/17 was lumbar back pain, spondylosis and radiculopathy, lumbar spondylosis and degenerative disc disease and continued disability from doing any work for which he was trained, educated and experienced.

66.

In spite of the report of Dr. Williams, no further benefits or other documentation was considered.

WHEREFORE, Petitioner, CLYDE GUILLORY, prays:

1. That the defendant, METROPOLITAN LIFE INSURANCE COMPANY (Metlife), be duly cited to appear herein and after due proceedings there be a Judgment determining that petitioner is entitled to benefits under both policies for short term and long term permanent disability as defined under the Louisiana statute and medical data as well as with the policy of insurance, and furthermore, plaintiff be entitled to attorney fees and penalties as provided together with all costs and interest from date payments were due.

2. Petitioner is a citizen of this state and because of his poverty and wants of means, is unable, either to pay the costs of this suit in advance, or as they accrue or to give security therefor, and desires to file and prosecute this action under the provisions of the Louisiana Code of Civil Procedure Articles 5181-5188.

3. Defendant be cast for all court costs.

4. For all general and equitable relief; and

5. For trial by jury.

St. Landry Parish Clerk of Court's Office

Filed 1-3 20 18

_Cassie Miller_
Dy. Clerk

BY ATTORNEYS:

GUGLIELMO, LOPEZ, TUTTLE, HUNTER & JARRELL

BY: _____
JAMES T. GUGLIELMO (#6417)
Post Office Drawer 1329
306 E. North Street
Opelousas, LA 70571-1329
(337) 948-8201
Attorneys for Clyde Guillory

OPELOUSAS, LOUISIANA 1-9 20 18
This is to certify that the above is a true and correct copy of the original on file in the office of the Clerk of Court of St. Landry Parish.

_Cassie Miller_
Deputy Clerk of Court

PLEASE SERVE:
METROPOLITAN LIFE INSURANCE COMPANY
Through its agent for service of process:
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge LA 70809